RECEIVED

DEC 2 1 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

KEVIN D. GOODLEY                      CIVIL ACTION NO. 05-0224

VS.                                   SECTION P

N. BURL CAIN, WARDEN                  JUDGE MELANÇON

                                      MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the court is the petition for writ of *habeas corpus* filed pursuant to 28

U.S.C. §2254 by *pro se* petitioner Kevin D. Goodly. Goodley is incarcerated at the

Louisiana State Penitentiary, in Angola, Louisiana where he is serving a life sentence

imposed following his January 11, 2000 conviction for second degree murder entered in

the 27th Judicial District Court, for St. Landry Parish.

### Claims for Relief

Petitioner alleges that he received ineffective assistance of counsel for the

following reasons: (1) because counsel failed to object to the prosecutor's erroneous

hypothetical example and misstatement of the law of principals during *voir dire* and in his

the opening statement; (2) because counsel mislead the jury by misstating the law of

principals in his opening statement and closing argument; (3) because counsel failed to

object to the State's closing argument which included an incomplete definition of the law

of principals; (4) because counsel failed to object to the State's rebuttal argument in

which the State reposed the erroneous hypothetical example; (5) because counsel failed to

object to the court's jury charges on the law of principals and specific intent; (6) because counsel made an improper closing argument contrary to the evidence and told the jury that by his participation, petitioner was guilty of murder; and (7) because counsel failed to submit proper jury instructions on the law of principals to the court. By supplemental and amending petition, petitioner also asserts an additional claim for relief, that the trial court erred in failing to instruct the jury regarding different grades of theft under the manslaughter statute.[1]

## Procedural History

Goodley and his cousin, Mack Tezeno, were charged by grand jury indictment with the second degree murder of Elta Dupre, the proprietor of Dupre's grocery store. The homicide occurred on October 21, 1998, while Dupre slept in a chair in the living quarters adjacent to the store. The evidence at trial revealed that Tezeno and Dupre went to the store in Goodley's car, that while at the store Tezeno shot Dupre with Goodley's rifle while Goodley was outside the store, that after the shooting Goodley drove Tezeno to Ville Platte, and that Goodley received cash and/or a case of antifreeze which had been taken from the store during the incident. The state's theory at trial was that Goodley was guilty as a principal to the offense of second degree murder, as the homicide occurred while Goodley and Tezeno were involved in the perpetration of an armed robbery.

---

[1] Petitioner's request for leave to supplement claims that there was insufficient evidence to support his conviction and that irrelevant and prejudicial "other crimes" evidence was erroneously introduced at trial was withdrawn and accordingly, denied as moot by separate ruling. [rec. docs. 11 and 12]. Accordingly, those claims are not before this court.

2

On January 11, 2000, petitioner was convicted of second degree murder following trial by jury in the 27th Judicial District Court. On April 20, 2000 Goodley was sentenced to life imprisonment.

Goodley timely appealed his conviction to the Louisiana Third Circuit Court of Appeals where he argued three assignments of error: (1) that there was insufficient evidence to support his conviction; (2) that irrelevant and prejudicial "other crimes" evidence was erroneously introduced at trial; and (3) that the trial court erred in failing to instruct the jury regarding different grades of theft under the manslaughter statute. On December 13, 2000, the Third Circuit Court of Appeals reversed the conviction, having found merit to petitioner's third Assignment of Error. *State v. Goodley*, 2000-846 (La. App. 3d Cir. 12/13/2000), 774 So.2d 374.

The State applied for writs in the Louisiana Supreme Court, and on January 4, 2002, writs were granted. *State v. Goodley*, 2001-0077 (La. 1/4/2002), 805 So.2d 1199. On June 21, 2002, the Louisiana Supreme Court reversed the Third Circuit, reinstated petitioner's second degree murder conviction and remanded the case for consideration of the two remaining assignments of error. *State v. Goodley*, 2001-0077 (La. 6/21/2002), 820 So.2d 478.

On December 11, 2002, the Third Circuit affirmed petitioner's conviction. *State v. Goodley*, 00-846 (La. App. 3d Cir. 12/11/2002), 832 So.2d 1165. Petitioner did not seek

further direct review in the Louisiana Supreme Court following the Third Circuit's affirmance.

On February 27, 2003, petitioner filed an Application for Post-Conviction Relief in the 27th Judicial District Court raising ineffective assistance of counsel claims. This application was denied by Reasons for Judgement dated April 9, 2003. The court found that "[a]fter reviewing the facts of this case extensively...the claims raised by petitioner or [sic] without merit and accordingly his application should be dismissed. This court is satisfied that the proceedings were conducted in accordance with the law and that the petitioner was afforded all the rights and privileges guaranteed to him by the Louisiana and United States Constitution."

Petitioner's initial requests for review in the Louisiana Third Circuit Court of Appeals were denied without prejudice pursuant to Rules 4-5 and Rule 4 of the Uniform Rules of the Courts of Appeal on July 7, 2003 and September 30, 2003, respectively. See *State v. Goodley*, KH-03-00575 (La. App. 3rd Cir. 7/7/03) (unpublished) and *State v. Goodley*, KH-03-01141 (La. App. 3rd Cir. 9/30/03) (unpublished). After making the appropriate corrections and submissions, the Louisiana Third Circuit Court of Appeal denied petitioner's request for review finding that petitioner "failed to prove his ineffective assistance of counsel claim...." *State v. Goodley*, KH-03-1466 (La. App. 3rd Cir. 12/30/03) (unpublished). Petitioner's request for review in the Louisiana Supreme

Court was filed on January 27, 2004 and denied on January 14, 2005. *State ex rel. Goodley v. State*, 2004-0266 (La. 1/14/2005), 889 So.2d 258.

Goodley filed the instant petition and amended petition on January 31, 2005 and May 9, 2005, respectively.[2] [rec. docs. 1 and 3]. The State has filed an answer and a memorandum in opposition to the petition. [rec. doc. 21]. This Report and Recommendation follows.

## LAW AND ANALYSIS

### *Standard of Review*

This *habeas* petition was filed on September 16, 2004, and therefore the standard of review is set forth in 28 U.S.C. §2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[3] AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) citing *Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389

---

[2]Petitioner filed his motion for leave to amend his petition on May 9, 2005. [rec. doc. 3]. After being granted leave to amend on July 19, 2005, petitioner filed a memorandum in support of his claim on August 12, 2005. [See rec. docs. 12 and 17].

[3]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief ...exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04 citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

(2000)[4] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas* corpus to state prisoners.").

> Title 28 U.S.C. §2254(d) as amended, states as follows:
> **(d)** An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of §2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 citing *Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac,*

---

[4]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the issues herein. Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under §2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and "correct" error in state court proceedings, but must exercise a more limited review . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000). Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya*, 226 F.3d at 404; *Orman*, 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) citing *Williams*, 120 S.Ct. at 1523; *Montoya*, 226 F.3d at 403-04 citing *Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of...[the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt*, 230 F.3d at 740 citing *Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt*, 230 F.3d at 741 citing *Williams*, 120 S.Ct. at 1523. The standard is one of objective reasonableness. *Montoya*, 226 F.3d at 404 citing *Williams*, 120 S.Ct. at 1521-22. A federal *habeas* court may not issue the writ "simply because that

7

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...[r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741, also citing 28 U.S.C. §2254(e)(1). Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id.* citing 28 U.S.C. §2254(d)(2); *Knox,* 224 F.3d at 476 citing *Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.2000).

In this case, petitioner's claim that the trial court erred in failing to instruct the jury regarding different grades of theft under the manslaughter statute was denied on the merits by the Louisiana Supreme Court by opinion issued on June 21, 2002. *State v. Goodley,* 820 So.2d 478 (La. 2002). Moreover, petitioner's remaining claims were denied on the merits by the state courts during post-conviction proceedings by written reasons issued on April 9, 2003 by the judge who presided over petitioner's trial and pre-trial matters, and by the Louisiana Third Circuit Court of Appeal by decision dated December 30, 2003. *State v. Goodley,* KH-03-1466 (La. App. 3rd Cir. 12/30/03) (unpublished). Accordingly, this court must apply AEDPA's deferential standard of review to petitioner's claims.

## I. Ineffective Assistance of Trial Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must establish
that (1) his attorney's representation fell below an objective standard of reasonableness;
and (2) there is a reasonable probability that, but for counsel's deficient performance, the
outcome of the proceedings would have been different. *Strickland v. Washington*, 466
U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner
to show that counsel's representation fell below an objective standard of reasonableness.
*Id.* at 688. The court's scrutiny is "highly deferential" and the court must apply a "strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance." *Id.* at 689-90. See also *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir.
1985).

*Strickland's* prejudice element requires a showing "that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different.[5] A reasonable probability is a probability sufficient to

---

[5]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
> An error by counsel, even if professionally unreasonable, does not warrant
> setting aside the judgment of the criminal proceeding if the error had no effect
> on the judgment. *Cf. United States .v Morrison*, 449 U.S. 361, 364-65 (1981).

> Defendant must show that there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been different. A
> reasonable probability exists if the probability is sufficient to undermine
> confidence in the outcome.

> When a defendant challenges a conviction , the question is whether there is
> reasonable probability that absent the errors the fact-finder would have a
> reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) citing *Strickland*, 104 S.Ct. at 2068. A petitioner must affirmatively prove prejudice. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998). Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635. Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland*, 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland*, demonstrating both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson*, 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1043.

## A. Law of Principals/Felony Murder Doctrine

In his first seven claims for relief, petitioner contends that the prosecutor, defense

counsel and the court incorrectly stated the law regarding criminal liability as a principal[6],

and thus improperly relieved the prosecution of proving his specific intent to kill. More

specifically, petitioner argues that all principals are not automatically guilty of the same

grade of the offense. Therefore, petitioner claims that it was error for the prosecutor,

defense counsel and the court to argue, imply and instruct that petitioner could be found

guilty of second degree murder on finding that he was involved in an armed robbery

during the course of which someone died. Petitioner's arguments are without merit.

During *voir dire*, the prosecutor explained the State's theory of the case under the

felony murder doctrine as follows:

> Now the law that applies to this case is as follows. There are a variety of
> ways in which someone can commit second degree murder. If someone
> kills somebody and does so with a specific intent to kill or inflict great
> bodily harm and the victim dies as a result of the defendant's actions, that is
> second degree murder....But there's another way. There's another way that
> second degree murder can be committed in Louisiana and its called the
> felony murder doctrine. And the felony murder doctrine applies to murders
> that happen during the course of serious events such as aggravated
> kidnaping, rapes, drive-by shootings, robberies and such. And in this case

---

[6]As set forth above, petitioner specifically contends that he received ineffective assistance of counsel
because counsel failed to object to the prosecutor's erroneous hypothetical example and misstatement of the law of
principals during *voir dire* and in his the opening statement, mislead the jury by misstating the law of principals in
his opening statement and closing argument, failed to object to the State's closing argument which included an
incomplete definition of the law of principals, failed to object to the State's rebuttal argument in which the State
posed the erroneous hypothetical example, failed to object to the court's jury charges on the law of principals and
specific intent, failed to submit proper jury instructions on the law of principals to the court, and made an improper
closing argument contrary to the evidence and told the jury that by his participation, petitioner was guilty of murder.

it's the State's position that the victim, Mr. Elta Dupre, was murdered at his grocery store during the commission of an armed robbery.

Now the law essentially reads as follows: y'all can see my poster; second degree murder is the killing of a human being, and that means somebody is dead, (2) when the offender is engaged in the perpetration or attempted perpetration of a robbery; such as, armed robbery, first degree robbery, or simple robbery.

Now this is what is the gist of the crime, "even though he has no intent to kill or to inflict great bodily harm." That simply means that the person who is on trial, his intent is irrelevant. What the law means is that if you are engaged in a crime such as armed robbery and someone dies during the commission of the crime, the law holds the person who committed the crime or who helped commit the crime responsible for the murder even though he didn't mean the death of the victim....[tr. pg. 816-817; see also pgs. 904-905 (second panel)].

To illustrate this law and test the prospective jurors understanding of same, the

prosecutor set forth the following hypothetical:

Okay. What the law requires is that the State prove that he was involved in a robbery; intentionally involved in a robbery, whether armed robbery or simple robbery, and someone died, regardless of whether or not he intended the death of the victim. Let me give you an example. Suppose that two people, Mr. Driver and Mr. Gun, get together and decide they're gonna go rob a bank. And this is the game plan. The game plan is that Mr. Driver is gonna wait in front of the car, you know, with the engine running, while Mr. Gun jumps in and he goes and he robs the teller. And that is all that is intended, a robbery and that is it. In fact, Mr. Driver says "look, I don't want anyone getting hurt." And yet while inside the bank "bam", Mr. Gun shots and kills the teller....[tr. pg. 818-819]

The prosecutor then repeated variations of this hypothetical to the prospective

jurors while questioning their ability to apply the felony murder doctrine in this case. [see

tr. pgs. 819-834].

12

After questioning the prospective jurors on their understanding of the felony murder doctrine, the prosecutor explained the elements of both armed and simple robbery. [tr. pg. 834-835]. The prosecutor then explained the law of principals as follows:

Now, the felony murder doctrine..at the heart of it is this law. It's called the law of principals. And this is right out of the book. The law reads that all persons concerned...concerned in the commission of a crime, whether present or absent, and whether they directly committed the act constituting the offense, aided and abetted in its commission, or directly or indirectly counseled or procured another to commit the crime are principals. And a principal is just as guilty as the person who actually completes the crime. If you sum it all up, if you help someone to commit a crime it doesn't matter whether or not you're there. If you help someone to commit a crime or you counsel and procure, that means put somebody else up to do the deed, you're just as guilty as the person who did it.

For instance, if someone were to recruit somebody off of the street and says "look, at American Bank they're gonna be having one of these big trucks full of money coming over there, this is what I want you to do. I'm gonna give you a gun, here's a map on how to get there, at 12:00 o'clock just go put the gun on these people and take that money." Even though the person who put them up did not physically go to the location of the robbery, in the eyes of the law he is just as guilty as the person who actually went over there with the gun and committed the robbery himself because he concerned himself with the robbery. And it doesn't matter whether or not he was physically present whenever the armed robbery occurred.... [tr. pg. 836-837].

During questioning of a second prospective jury panel, the prosecutor again used a similar hypothetical employing Mr. Driver and Mr. Gun and specifically asked the prospective jurors "[d]o you have a problem assessing culpability to the other individual that did not have the intent to kill, but had the intent to commit an armed robbery along with someone else?" [tr. pg. 907]. She also again clarified that "the individual can be

13

engaged in the perpetration of an armed robbery or a simple robbery, and in fact have no intent whatsoever for anyone to die or to inflict great bodily injury upon anyone and still be held accountable under the law for second degree murder." [tr. pg. 910-911]. After discussing the elements of armed and simple robbery, the prosecutor again noted that "it is the State's position that this particular defendant, Mr. Goodley, did not pull the trigger but that he was in fact involved in an armed robbery with another individual that resulted in the death of Mr. Elta Dupre." [tr. pg. 912]. Therefore, she again went over the law of principals as follows:

And in discussing that we need to go over the definition of principals. And it reads as follows "all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet its commission, or directly or indirectly counsel or procure another to commit the crime are principals. [tr. pg. 912].

During opening argument, the prosecutor stated the applicable law, with special emphasis on the felony murder doctrine and the law of principals, as follows:

With that I wanna [sic] discuss the law with you again. The law in this case, it's plain. It's straightforward. And I don't think there's gonna be any dispute about it's application. It's called the felony-murder doctrine. And the felony murder doctrine reads as follows: " Second degree murder is (1) the killing of a human being." Let's rest assured right now that we have a dead human being. A ninety (90) year old store keeper by the name of Mr. Elta Dupre. "When the offender is engaged in the perpetration or the attempted perpetration of armed robbery, first degree robbery, or simple robbery." That simply means that somebody died while the defendant was either committing or trying to commit an armed robbery. "Even though he has no intent to kill or to inflict great bodily harm." That simply means that whether or not this defendant pulled the trigger and whether or not this defendant actually intended the death of the victim to come out was

14

irrelevant. The only thing that the State of Louisiana has to prove to you is that someone is dead and as a result of that death, that death resulted from this defendant's participation in a robbery. Whether it be armed, first degree or simple.

Now I don't think anybody has any trouble with the definition of an armed robbery. It's straightforward. " Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, (2) by the use of force or intimidation, (3) while armed with a dangerous weapon."

Now when you were selected to serve on this jury we all talked about the law of principals. The person who actually commits the crime is guilty. But the law also provides that if you intentionally help someone commit a crime, encourage somebody to commit a crime or intentionally involve yourself in the commission of a crime, you're guilty under the law of principals. The law of principals essentially reads, " That all persons concerned and that's the operative word, concerned in the commission of a crime, whether present or absent; it doesn't mean they have to be there; and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." Now the legislature in all it's wisdom has decided that crimes such as armed robbery, first degree robbery or simple robbery, these dangerous offenses. And it is foreseeable that if you're gonna become involved whether directly or indirectly in the commission of an armed robbery, it is foreseeable that someone is gonna get hurt or even killed. That's why we have the felony murder doctrine. And another caveat is that sometimes crimes such as armed robberies are team efforts. More than one (1) person can be responsible for the same act. And with that, that takes us to the facts. [tr. pg. 333-335].

During opening argument, defense counsel argued that petitioner was not a

principal to armed robbery or second degree murder, but rather was merely an accessory

after the fact. Therefore, counsel argued that petitioner should be found not guilty.

During his argument, he stated the applicable law as follows:

15

There are two types of participants to crimes. And the law says that. The law gives you that. It says parties, parties to a crime under subsection B Parties Classified. Now parties to crimes are classified as (1) principals and I believe Mr. Tromblay has outlined for you and has given you the law of principals. And (2) accessories after the fact. So, there's two (2) types of participants of a crime. (1) principals and (2) accessories after the fact.

I'm just briefly. "An accessory after the fact is any person who after the commission of a felony shall harbor, conceal or aide the offender knowing or having reasonable grounds to believe that he has committed a felony and has done so with the intent that he may help the offender avoid or escape arrest, trial, conviction or punishment." Again, the law for those people that are concerned in the commission of crimes are principals. And though there are those people who after the commission of a crime get involved and give some aide to the offender and those are accessories after the fact.

Your function as a juror is to make a determination of whether this guy, not that this guy committed a crime, that's not the question. Because an accessory after the fact is a crime. But that is not what you're facing. You are to determine whether or not this individual is a principal. If you determine that he is something else than a principal, such as an accessory after the fact, then the responsive verdict, then the verdict in this case is not guilty. Because he is not a principal. So you are not here to determine whether or not he has committed a crime. An accessory after the fact....You are here to determine whether or not he has committed this crime. This crime and that's second degree murder committed by another individual...who was committing an armed robbery, while this individual participated.

...

Now the State must prove, must prove that at the time Mr. Gallow, Mr. Gallow and Mr. Goodley, at the time they left, the time they were going there, at the time they pulled up, sometime prior to someone going in that store, this man must, he, not someone else, he must have had the specific intent to participate in an armed robbery. That's what the evidence must show, specific intent. That he must have had the specific intent to commit an armed robbery....

Not that he was there. Not that he knew that someone else had specific intent to do something but he must have had the specific intent to do it. It's

16

not a transferred intent. He must have had specific intent to arm rob that store.
...
There will be no evidence that somehow prior to this event they sat down and conspired to commit the armed robbery. None whatsoever. He didn't conspire to commit the armed robbery. He didn't do the armed robbery. He didn't suggest to someone that they do an armed robbery or get Mr. Gallow to do the armed robbery. He was not involved in the commission of the offense. Although there when it was accomplished.

We discussed that. You know basically what our contention is. And that's the defense in this particular case.

Again I ask you to pay, pay careful, close attention to the evidence. And I submit to you that after you have heard the evidence and after you have made the legal and the rational inferences from that evidence that you will have no difficulty in saying that Mr. Goodley is not guilty of the crime of second degree murder. That he did not participate actively or was concerned in the commission of an armed robbery. And therefore through this felony murder doctrine is not guilty of second degree murder. But you very well may find that after the commission of this murder that when this man drove this murderer off, he indeed became involved after the fact. And if he is involved after the fact, that does not make him guilty as a principal. That makes him guilty of some other crime. Some other crime, accessory after the fact....If you should determine and you determine in your own mind that the evidence clearly shows that he was an accessory after the fact then that excludes the possibility that he was a principal. And should that determination in your mind be made, then you will be obligated to return a verdict, insofar as it is second degree murder under the law of principals to armed robbery, of not guilty. [tr. pg. 341-352].

In closing argument the prosecutor reminded the jury of the applicable law as

follows:

This is a second degree murder case. And second degree murder under this theory is defined as follows: "The killing of a human being." Which you heard the testimony of Dr. Laga that in fact a human being was killed. And that human being was Elta Dupre. Second, "When the offender is engaged in the perpetration or attempted perpetration of an armed robbery, first degree robbery or simple robbery, even though, even though ladies and

gentlemen he has no intent to kill or inflict great bodily harm." And again we told you that this was an important element. Because at the beginning of the State and I think again with Mr. Lopez conceded that this defendant is not the triggerman. That this defendant did not kill Mr. Elta Dupre.

But the reason we're here today is under the felony murder doctrine. And through, through the law of principals, through the law of principals which reads as follows: "All persons concerned in the commission of a crime, whether present or absent and whether they directly commit the act, constituted the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime are principals." The defendant, Mr. Goodley, from the evidence adduced the last two days...meets this definition, principal to an armed robbery of Mr. Elta Dupre....

...That this defendant along with his cousin committed the armed robbery of Mr. Elta Dupre....

...I would submit to you...that you would find this defendant, Kevin Goodley actively participated in an armed robbery of Mr. Elta Dupre and as a result of that armed robbery, Mr. Dupre is now dead.

I would ask you...to...return a verdict of guilty as charged of second degree murder.... [tr. pg. 575-577].

In closing, defense counsel again argued that petitioner was an accessory after the

fact and not a principal to armed robbery or second degree murder, and therefore should

be found not guilty of the crime charged. [tr. pg. 585-586]. In sum, defense counsel

argued as follows:

An accessory after the fact is "A person who after the commission of a felony shall harbor, conceal, or aide the offender." What does he do? He aids the offender. That man comes back to the car. He says "He just committed an armed robbery." He sees him carrying some stuff. And what does he do?...He aids that offender. He drives that man away. He drives that man away with the intent that he may avoid or escape from arrest, trial...It's just that simple.....

...

So after this murder he has attempted to help Mr. Tezeno avoid his just
deserts and for that we tell you he is guilty as an accessory. Purdee [sic]
guilty as an accessory. But I also told you it didn't determine whether he's
guilty as a principal. If he's guilty as an accessory, he's not guilty as a
principal. And if he's not guilty as a principal, your verdict must be not
guilty. It's just that simple....[tr. pg. 591-592].

In rebuttal, the prosecutor reminded the jurors of their obligation to find petitioner

guilty of second degree murder under the felony murder doctrine if they found that the

State had proved that petitioner was a principal to an armed robbery during the course of

which someone, namely Elta Dupre, died. [tr. pg. 599].

Following closing arguments, the trial court issued instructions setting forth the

elements of the applicable subsection of the crime of second degree murder under which

petitioner had been charged, and more specifically, the law regarding the felony murder

doctrine as follows:

R.S. 14:30.1 defines second degree murder under the felony murder doctrine.

The defendant is charged with the second degree murder of Mr. Elta Dupre
while engaged in the commission or attempted commission of an armed
robbery or a simple robbery.

Second degree murder is the killing of a human being when the offender is
engaged in the commission or attempted commission of an armed robbery,
or simple robbery even though he has no intent to kill or to inflict great
bodily harm.

Thus, in order to convict the defendant of second degree murder you must
find:

    (1) That there was a killing of a human being and
    (2) That the killing occurred while the defendant was engaged
    in the commission or attempted commission of armed

19

robbery, or simple robbery. Whether or not he had an intent to
kill or to inflict great bodily harm. [tr. pg. 618].

The court then explained the elements of armed, first degree and simple robbery to

the jury. [tr. pg. 618-619]. The court also explained the two classifications of parties to a

crime[7], defining the law of principals as follows:

> R.S. 14:24 defines principals. All persons concerned in the
> commission of a crime whether present or absent and whether
> they directly commit the act constituting the offense, aid and
> abet in its commission, or directly of indirectly counsel or
> procure another to commit the crime, are principals. [tr. pg.
> 620].

The court then defined both general[8] and specific criminal intent, explaining that

"In this case the State must prove that the defendant had the specific intent to commit the

armed robbery or simple robbery...." The court also noted that "the mere knowledge of

the co-defendant's specific intent is not sufficient to prove that this defendant had specific

intent." [tr. pg. 621]. The court defined specific intent as "that state of mind which exists

when the circumstances indicate that the defendant actively desired the prescribed

---

[7]The court defined accessory after the fact as "any person who after the commission of a felony shall
harbor, conceal or aid the offender knowing or having reasonable grounds to believe that he has committed a felony
and with the intent that he may avoid or escape from arrest, trial, conviction or punishment." [tr. pg. 621].

[8]General criminal intent was defined as "present when the circumstances indicate that the defendant must
have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."
[tr. pg. 621].

20

criminal consequences to follow his act or failure to act to the crime of armed robbery or simple robbery."[9] [tr. pg. 621].

Although petitioner argues that all principals are not automatically guilty of the same grade of an offense, his reliance on that principle of law and the cases he cites in support of same is misplaced.[10]  Had petitioner been charged with first degree murder (La.R.S. 14:30) or had the State proceeded under a second degree specific intent murder theory (La.R.S.14:30.1(A)(1)), his argument may have merit.  However, petitioner was not charged with first degree murder.  Moreover, as is demonstrated in the above cited challenged portions of the transcript, the State proceeded solely under the felony murder doctrine, contending that petitioner was engaged in the armed robbery of Elta Dupre, and hence was guilty as a principal to Mr. Dupre's second degree murder.

---

[9]With respect to finding intent, the court explained that "whether criminal intent is present must be determined in light of ordinary experience.  Intent is a question of fact which may be inferred from the circumstances.  You may infer that the defendant intended the natural and probable consequences of his acts." [tr. pg 621-622].  Although not presented as a separate claim for relief, petitioner argues that this portion of the instructions "relieve the state of the burden of proof and such is clearly unconstitutional."  In support he cites the United States Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450 (1979).  *Sandstrom* held that the phrase "the law presumes that a person intends the ordinary consequences of his voluntary acts" created a prohibited presumption. *Dupuy v. Cain*, 201 F.3d 582, 587-588 (5th Cir. 2000) citing *Sandstrom, supra.*  Here, the instruction provided for an allowable inference; it did *not* create a prohibited presumption. See *Id.*  The instruction was phrased in permissive terms and clearly instructed the jury that it *may* draw an inference if the State proved certain facts, not that the jurors had to presume any fact.  As such, the challenged language created no more than a permissive inference which comports with Constitutional standards.  See *United States v. Moye*, 951 F.2d 59, 63 (5th Cir. 1992) (distinguishing *Francis v. Franklin*, 471 U.S. 307, 316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985) because "that case was not cast in permissive terms but rather, '[t]he jurors were not told that they had a choice, or that they *might* infer that conclusion; they were told only that the law presumed it.'"); *Ulster County*, 442 U.S. at 157, 99 S.Ct. at 2224.

[10]Petitioner cites *State v. McAllister*, 366 So.2d 1340 (La. 1978), *State v. Holmes*, 388 So.2d 722 (La. 1980) and *Robertson v. Cain*, 324 F.3d 297 (5th Cir. 2003).  Each of these cases involved first degree murder prosecutions.

21

Under the felony murder doctrine Louisiana law requires the following elements be proved to support a conviction for second degree murder: (1) that a human being is killed, and (2) that at the time of the killing, the defendant was engaged in the perpetration or attempted perpetration of an enumerated crime, which crimes include armed robbery, first degree robbery and simple robbery. La. R.S. 14:30.1(A)(2)(a). Moreover, under the felony murder doctrine, a showing of specific intent to kill is not required so long as the defendant is engaged in one of the enumerated crimes at the time of the killing. *Id.* "One need not possess specific intent to kill or inflict great bodily harm to be a principal to a second degree felony murder." *State v. Gurganus*, 864 So.2d 771, 775 (La. App. 3d Cir. 2003) citing *State v. Hays*, 806 So.2d 816, 823 (La. App. 5th Cir. 2001); *State v. Bennett*, 454 So.2d 1165, 1184 (La. App. 1st Cir. 1984). "Unlike first degree murder, no intent to kill or inflict great bodily harm is necessary to be a principal to second degree murder occurring during the course of a robbery." *State v. Touchet*, 847 So.2d 746, 748 (La. App. 3rd Cir. 2003) citing *State v. Logan*, 822 So.2d 657, 663 (La.App. 2nd Cir. 2002); *Bennett*, 454 So.2d at 1184. Thus, contrary to petitioner's allegations, under this theory, specific intent to kill was not a necessary element for the State to have proved at trial. Thus, the challenged passages did not improperly relieve the

prosecution of proving petitioner's specific intent to kill, as the prosecution had no such burden.[11]

Moreover, it is clear that the hypotheticals used by the State during *voir dire*, opening and closing, the law and arguments of the prosecutor and defense counsel in *voir dire*, opening, closing and rebuttal, and the instructions given by the court to the jury at the close of evidence conveyed a correct statement of the applicable Louisiana law. The challenged passages mirror the Louisiana statutory definitions of felony murder, principals to a crime and specific criminal intent. See La. R.S. 14:30.1(A)(2)(a); La. R.S. 14:24; La. R.S. 14:10(1). Additionally, the court's instructions with respect to these concepts are virtually identical to the instructions recommended by Louisiana authorities and used by many Louisiana trial courts. See Lamonica and Joseph, *Louisiana Civil Law Treatise, Criminal Jury Instructions*, §10.30.1(A)(2)(a), (b); §4.06 and §4.01. Thus, it was not error for the prosecutor, defense counsel or the court to argue, imply and instruct that petitioner could be found guilty of second degree murder on finding that petitioner was engaged in the armed robbery of Elta Dupre, during the course of which Dupre died.

In light of the above, petitioner did not receive ineffective assistance of counsel. There was no basis for a defense objection to the prosecutor's hypothetical example used

---

[11]To the extent that petitioner claims that the jurors may not have understood that his specific criminal intent to commit armed robbery had to be proven in order to find him guilty, that claim is refuted by the portion of the jury charges quoted above. The trial court defined both general and criminal intent, stated the elements of armed robbery, and expressly instructed the jurors that the state had to prove that petitioner specifically intended to commit armed robbery to find him guilty. Moreover the court explained that petitioner's mere knowledge of his co-defendant's specific intent was insufficient. [tr. pg. 620].

during *voir dire*, opening and rebuttal argument, or the prosecutor's summary of the law of principals during *voir dire*, opening, closing and in rebuttal argument, nor was there any basis for an objection to the court's jury charges as the court properly charged the jury on second degree murder under the felony murder doctrine, the law of principals, and general and specific intent. Thus, petitioner's counsel did not fall below the level of objective reasonableness when he failed to lodge these objections as any such objections would have been overruled. See *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) citing *Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness...."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) citing *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Additionally, given that the court properly instructed the jurors on the applicable law, defense counsel was not deficient for failing to submit additional jury instructions to the court. Under the circumstances, such actions were simply not warranted. Moreover, because defense counsel conveyed a correct statement of the law to the jury in his opening statement and closing argument, counsel's performance cannot be found deficient in this respect. Petitioner has failed to satisfy the first prong of *Strickland*. He is therefore not entitled to *habeas* relief on any of the above ineffective assistance claims. Accordingly, these claims are without merit.

To the extent that petitioner complains that counsel's closing argument to the jury was in any way improper, that claim is briefly addressed. Counsel clearly argued that petitioner was not a principal to the armed robbery or murder of Elta Dupre because he was not a participant in those crimes. Rather, although petitioner was present at the scene of the armed robbery and murder, counsel argued that petitioner was merely a bystander who, by virtue of his driving Tezeno away from the scene, became an accessory after the fact. As such, counsel argued that petitioner could not be found guilty of second degree murder.

Being an accessory after the fact is a separate offense under Louisiana law, not charged in petitioner's case. Moreover, being an accessory after the fact is not a responsive verdict or lesser and included offense of second degree murder. Rather, the responsive verdicts to a charge of second degree murder are guilty of second degree murder, guilty of manslaughter or not guilty. La.C.Cr. P. art. 814(3); *State v. Stacy,* 680 So.2d 1175, 1178 (La.1996). Therefore, had petitioner's counsel persuaded the jury that petitioner was a mere accessory after the fact, petitioner would have to have been found not guilty of the crime charged. Counsel's argument and theory of defense was legally proper. Indeed, such arguments are routinely made in second degree murder prosecutions of persons charged as principals to that crime. See *Stacy,* 680 So.2d at 1178-1179. Given the "highly deferential" standard set forth in *Strickland,* under the facts of this case, the undersigned cannot find that counsel's actions were objectively unreasonable or that

25

defense counsel's conduct fell below the wide range of reasonable professional assistance. Accordingly, this claim is without merit.

Finally, under the applicable standard of review, federal *habeas* relief is not warranted with respect to any of petitioner's claims of ineffective assistance of counsel. In finding these claims meritless, the Louisiana Third Circuit Court of Appeal found that petitioner "failed to prove his ineffective assistance of counsel claim...." In light of the above and under the circumstances presented herein, the undersigned cannot find that the state court's determination was contrary to, or an unreasonable application of, federal law, or that the determination was an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

For the above reasons, petitioner is not entitled to federal *habeas* relief on any of his ineffective assistance of counsel claims.

## B. Jury Instruction on Grades of Manslaughter

Petitioner contends that the trial court erred in failing to instruct the jury regarding different grades of theft for purposes of conviction under the manslaughter statute. The State contends that this claim is not cognizable on federal *habeas* review because the claim involves issues of state law. For the following reasons, the State's position is well taken.

28 U.S.C. §2254(a) provides that federal courts "shall entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgement of a

26

state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Thus, when reviewing applications for *habeas corpus*, federal courts will only review allegations of deprivations of federal constitutional rights. *Deters v. Collins*, 985 F.2d 789, 791 fn. 1 (5th Cir. 1993) citing 28 U.S.C. §2254(a). Accordingly, "[a] federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991). Therefore, "a 28 U.S.C. §2254 applicant must claim violation of a federal constitutional right." *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). This is so because federal courts "do not sit as a super state supreme court...." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). It is not the province of a federal *habeas* court to determine if the state courts properly applied state law. *Estelle v. McGuire*, 502 U.S. at 68, 112 S.Ct. at 480; *Narvaiz*, 134 F.3d at 695. Rather, "[f]ederal *habeas corpus* review is limited to errors of constitutional dimension...." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). Thus, the Fifth circuit has articulated on numerous occasions that the failure of a state to follow its own rules of law and procedure is not grounds for relief in federal *habeas* actions. *Lavernia v. Lynaugh*, 845 F.2d 493, 495 (5th Cir. 1988) ("[f]ederal *habeas* courts are without authority to correct simple misapplications of state criminal law or procedure..."); *Manning v. Warden*, 786 F.2d 710, 711-12 (5th Cir. 1986) ("whether the state followed its own procedure is not the concern of a federal *habeas* court..."). Rather, the sole inquiry is whether there has been a constitutional infraction.

*Id.* Absent a violation of the Constitution, this court must defer to the state court's interpretation of its law. See *Creel v. Johnson,* 162 F.3d 385, 390-391(5th Cir. 1998).

Review of petitioner's pleadings in this court reveals that petitioner has presented his claim for relief primarily under state law. In the body of his argument petitioner argues that the trial court's failure to charge the jury on the different grades of theft constituted a violation of Louisiana Code of Criminal Procedure articles 802, 804 and 808, and in support of his argument, petitioner cites state court decisions interpreting those articles. There is no mention or argument of any federal constitutional issue or any federal law supporting such a claim. Rather, this issue is argued solely on state law grounds. For this reason, petitioner's claim that the trial court erred in failing to instruct the jury regarding different grades of theft under the manslaughter statute is not cognizable on federal *habeas* review and should be dismissed.

The undersigned notes that in this court petitioner attempts to cast his claim as arising under the Constitution. At the end of his purely state law argument, petitioner conclusorily states that in light of his argument he "has shown...[that] his rights to Due Process were violated." However, review of petitioner's briefs filed in the Louisiana state courts reveals that in those courts petitioner never raised a constitutional Due Process claim. Hence, that constitutional claim is both unexhausted and "technically" procedurally barred.

The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court

28

clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson,* 188 F.3d 250, 254-55 (5th Cir. 1999) citing *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546 (1986) and *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999).

Before seeking a federal writ of *habeas corpus,* a state prisoner must exhaust available state remedies, thereby giving the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004) citing 28 U.S.C. § 2254(b)(1), and *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) *(per curiam)* quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court, including a state supreme court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.* citing *Duncan,* 513 U.S. at 365-366, 115 S.Ct. 887, and *Boerckel,* 526 U.S. at 845. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court

petition or brief ... by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' " *Howell v. Mississppi,* 543 U.S. 440, 125 S.Ct. 856, 859 (2005) citing *Baldwin,* 541 U.S. at 32. This is necessary to establish that a federal question was properly presented to a state court. *Id.* Moreover, the burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised. *Bell v. Cone*, 543 U.S. 447, 125 S.Ct. 847, 851 at fn. 3 (2005) citing *Baldwin,* 541 U.S. at 30- 32.

A petitioner has "technically exhausted" his federal claim if he fails to properly and timely present his claim to the Louisiana courts and is time-barred from seeking relief in the Louisiana courts because he has allowed his state court remedies to lapse. *Magouirk v. Phillips,* 144 F.3d 348 (5th Cir.1998) citing *Coleman v. Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue,* 188 F.3d at 254-55; *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998). In such a case, however, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted. *Id.*

Review of petitioner's filings in the Louisiana Third Circuit Court of Appeal and the Louisiana Supreme Court reveals that petitioner did not raise any federal claim based on the court's failure to instruct the jury on the different grades of theft. [tr. pg. 72-90; 120-129]. Moreover, there is no mention or argument of any federal constitutional issue or any federal law supporting such a claim in his filings which could have alerted those courts that his claim could arise under federal law. Petitioner did not cite the Constitution or any cases directly construing the Constitution in support of this claim. Rather, this issue was raised in the state courts solely on state law grounds. Because petitioner failed to raise any federal constitutional claim in connection with his claim regarding the court's instruction omitting the different grades of theft, it is clear that any such federal claim is unexhausted. Under Louisiana Code of Civil Procedure 930.8, the time to present such a federal claim has expired; petitioner is now time-barred from seeking review of a federal claim in the Louisiana courts. Thus, any potential federal claim which petitioner may have had is also "technically" procedurally defaulted.

Accordingly, this court may refuse to review the merits of this claim under the procedural default doctrine unless petitioner demonstrates cause and prejudice for the default or that a miscarriage of justice will result from the denial of federal *habeas* review.

### Cause and prejudice

The Supreme Court has defined what constitutes cause such as to allow review by

this court where a claim has been procedurally defaulted. In *Murray v. Carrier*, the

Supreme Court explained that cause requires an impediment external to the defense:

> [W]e think that the existence of cause for a procedural default must
> ordinarily turn on whether the prisoner can show that some objective factor
> external to the defense impeded counsel's efforts to comply with the State's
> procedural rule. Without attempting an exhaustive catalog of such
> objective impediments to compliance with a procedural rule, we note that a
> showing that the factual or legal basis for a claim was not reasonably
> available to counsel, or that some interference by officials made compliance
> impracticable, would constitute cause under this standard.

*Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted). If a petitioner fails to

demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v.*

*Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Petitioner has failed to demonstrate cause for his default. Accordingly, the

undersigned will not undertake an examination of prejudice.

### Miscarriage of Justice

In order for a *habeas corpus* petitioner to avoid a procedural default by showing a

fundamental miscarriage of justice, the petitioner must assert his actual innocence by

showing that "a constitutional violation has probably resulted in the conviction of one

who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649; 91

L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the

petitioner must allege that as a factual matter he did not commit the crime of which he

32

was convicted. *Corwin v. Johnson,* 150 F.3d 467, 473 (5th Cir. 1998); *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v. Johnson,* 89 F.3d 210, 213 (5th Cir.), *cert. denied,* 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996), quoting *McClesky v. Zant,* 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993). Petitioner has not shown as a factual matter that he is actually innocent of the crime of which he was convicted, and thus he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claim. Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

**Merits**

Moreover, even if petitioner's claim was not defaulted and was cognizable on federal *habeas* review, it is nevertheless without merit. Under Louisiana law, manslaughter is a lesser included responsive verdict to second degree murder. *State v. Lombard,* 486 So.2d 106, 111 (La. 1986) citing La.C.Cr.P. art. 814(A)(3). Here, the trial court instructed the jurors on this lesser included offense. However, petitioner complains that the instruction was incomplete because the court did not instruct the jurors on the different grades of theft, which could be a non-enumerated felony for purposes of conviction under the manslaughter statute, depending on the value of the items taken during the crime.

33

In its initial instruction the court defined manslaughter as "the killing of a human being when the defendant is engaged in the commission or attempted commission of a felony other than armed robbery or simple robbery, or an intentional misdemeanor affecting the person even though there is no intent to kill, such as a battery or an assault." The court then instructed the jurors on the elements of battery. [tr. pg. 619-620]. Theft was not included in the trial court's initial instructions. After being presented with a note from the jury asking for, *inter alia*, the definition of theft, armed and simple robbery, manslaughter and second degree murder, the court read the requested definitions, including the general definition of theft. [tr. pg. 2, 624-627]. Defense counsel noted for the record his objection to the court's failure to mention that theft could be a non-enumerated felony for purposes of the manslaughter statute. Defense counsel also asked that felony theft and misdemeanor theft be differentiated. [tr. pg. 627-627-629].

"In a non-capital murder case, the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *Creel*, 162 F.3d at 390-391 citing *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir.1988) and *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir.1985). In this case, the court did not fail to give the lesser included offense instruction on manslaughter. Rather, the court gave a manslaughter instruction tailored to the state law applicable in petitioner's case and the facts presented at trial. Because no constitutional issue is presented when a state court entirely fails to instruct the jury on a lesser and included offense under state law, it follows then, that the failure to

34

give a more detailed lesser and included offense instruction is equally of no constitutional significance. Absent a violation of the Constitution, this court must defer to the state court's interpretation of its law as to whether the instruction was warranted. *Creel*, 162 F.3d at 391 citing *Valles*, 835 F.2d at 128. See also *Runnels v. Dretke*, 2004 WL 1773451, *8 (N.D.Tex. 2004); *Juneau v. Cockrell*, 2002 WL 31875602, *3 (N.D.Tex. 2002).

Under Louisiana law, a trial judge has a duty to instruct jurors on "every phase of the case supported by the evidence" and that duty extends to "any theory...which a jury could reasonably infer from the evidence." See La.C.Cr.P. art. 802; *State v. Marse*, 365 So.2d 1319, 1323 (La. 1979). In rejecting petitioner's claim, the Louisiana Supreme Court concluded that under Louisiana law the trial court had no duty to charge the jury on the different grades of theft under the manslaughter statute as there was no viable legal or factual basis for such a charge. See *State v. Goodley*, 820 So.2d 478 (La. 2002).[12] This court must defer to the Louisiana Supreme Court's interpretation of this point of Louisiana law. *Creel*, 162 F.3d at 391 citing *Valles*, 835 F.2d at 128; *Runnels*, 2004 WL 1773451, at *8; *Juneau*, 2002 WL 31875602, at *3.

For the above reasons, petitioner is not entitled to federal *habeas* relief on this claim.

---

[12]The court held that under Louisiana law, the jury could not have legally found the defendant guilty of a crime other than robbery (*Id.* at 483), and that "it was not legally possible in this case for the jury to conclude that [petitioner] was guilty, as a principal or accessory, of felony-theft under the manslaughter statute, as the taking [in this case] occurred during the course of the crime of murder." *Id.* at 484. The court also found that "the jury lacked a factual basis to find felony-theft as the underlying offense for a manslaughter conviction" because there was no evidence presented "to support the element of value [necessary] for conviction of felony theft." *Id.* at 495. Thus, the requested charge "was unsupported by the evidence presented at trial." *Id.* citing La.C.Cr. P. art. 807.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** the instant petition for federal *habeas corpus* relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on _December 21,_ 2005.

_C. Michael Hill_

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: _12-21-05_
BY: _QGC_
TO: _OTLM_
_emH_